TRULINCS 15668002 - HOWARD, STEPHEN - Unit: COL-A-A
----------------------------------------------------------------------------

FROM: 15668002
TO:
SUBJECT: CRIMINAL CASE 3:15-CR-240-MHT
DATE: 04/24/2020 05:56:28 PM

RECEIVED
2020 APR 29  A 10: 37
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION
Criminal Case No. 3:15-cr-240-MHT

STEPHEN HOWARD
   PETITIONER -
    PRO-SE,

v.

UNITED STATES OF AMERICA,
   RESPONDENT.

### EMERGENCY MOTION FOR COMPASSIONATE RELEASE

Stephen K. Howard (Howard) file this EMERGENCY MOTION to seek compassionate release under 18 U.S.C. 3582 (c)(1)(A)(i).

### WAIVER OF COMPLIANCE

Due to the current pandemic the BOP is in lockdown. Howard, PRO-SE, does not have access to typewriter nor word processor. Hence, Howard respectfully request a waiver of the compliance rules as to this motion which was printed using BOP's email system and available printer.

### EXCUSABLE ERROR

As a preliminary matter Howard cites Haines v. Kerner, 404 U.S. 519 (1972) for the proposition that PROSE litigants pleadings are to be construed liberally and held to less stringent standards than formal pleadings drafted by lawyers. If the Court can reasonably read pleadings to state valid claims on which Howard could prevail, it should do so despite failure to cite proper legal authorities, confusion of legal theories, poor syntax and sentence construction, or Howard's unfamiliarity with pleading requirements. See also Erickson v. Pardus, 551 U.S. 89,94 (2007).

### I WHETHER THE COURT HAS JURISDICTION AND DISCRETION TO PROVIDE RELIEF

In 2018 Congress passed the First Step Act Pub.L.115-391 132 stat. 5194 which amended 18 U.S.C. 3582 (c)(1)(A) to add a provision allowing Courts to consider motion by defendants for compassionate release without a motion by the BOP director. A term of imprisonment can be reduced only if "extraordinary and compelling reasons warrant such a reduction." Id. subsection (i). Although there is not policy statement which constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under 3582(c)(1)(A)(i), the old policy statement provides helpful guidance. U.S.S.G. 1B1.13 cmt.n.1 (A)-(D); see also U.S. v Maumau, 2020 U.S.Dist. Lexis 28392 (D.Utah, Feb. 18, 2020)(collecting cases); See also U.S. v. Perez, (No. 7 Cr. 513-3 (AT)(S.D.N.Y. Apr. 1, 2020); U.S.v. Perdigao, (No. 07-103)(E.D.La., Apr. 2, 2020); U.S v. Muniz (No. 4:09-cr-0199-1)(S.D.Tex., Mar. 30, 2020); U.S. v. Gonzales (No. 2:18-cr-0232-TOR-15)(E.D. Wash. Mar. 31, 2020); U.S. v. Davis, (No. PJM 00-424-2)(D.Md., Mar. 5, 2020); U.S. v. Mondaca, (No. 89-cr-0655-DMS)(S.D. Cal., Mar. 3, 2020); U.S. v. Campagna, (No.16 cr-78-01(LGS))(S.D.N.Y., Mar. 27, 2020); U.S. v. Villanueva, (18 cr. 472-3 (KPF)) (S.D.N.Y. Apr. 8, 2020); U.S. v. Winckler, (No. 13-318)(W.D. Pa, Apr. 3, 2020); U.S. v. Lowry, (No. 18 cr 862)(S.D.N.Y. Apr., 6, 2020); U.S.v Smith, (No.12 cr 133(JFF))(S.D.N.Y. Apr., 13, 2020) and U.S. v Coker, (No. 3:14-cr-085)(E.D. Tenn., Apr. 15, 2020). The final category, at U.S.S.G. 1B1.13 cmt. n.1(D), is a catch-all provision that permits relief for "extraordinary and compelling reason other than, or in combination with, the reason described in subdivisions (A) through (C)" id. Allowing just the BOP's director to make findings of extraordinary and compelling reason "is inconsistent with the law". Maumau, Supra at 3-4.

TRULINCS 15668002 - HOWARD, STEPHEN - Unit: COL-A-A

---

## II WHETHER HOWARD SHOULD HAVE ASKED THE WARDEN TO RECOMMEND COMPASSIONATE RELIEF AND EXHAUST REMEDIES IF DENIED

There are some well-established exceptions to exhaustion such as 1) if exhaustion would be futile or, 2) if there are exigent circumstances. Howard meets both. See U.S. v. Bikundi, 2017 U.S. Dist. Lexis 222083 (D.D.C. June 28, 2017) at footnote 3 (Exhaustion "is not required where any resort to administrative remedies would be futile particularly where denial would be assured by the existence of an official BOP policy"); see also U.S.v Colvin, 3:19-cr-179(D.Conn. 2020)("exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief"). 1) In light of the current pandemic, the Attorney General (AG) William Barr, sent two memos -on March 26 and Apr 3- to the BOP in order to release inmates to home confinement. The memos set forth guidance to find legible inmates for home confinement. The BOP, however, issued its own internal guidelines with more restricted criteria to place inmates in home confinement , i.e. a) Primary or prior offense is not violent, sex related or terrorism; b)No Detainer; c) Mental health care level less than IV; d) PATTERN (minimum); e) BRAVO (BOP risk evaluating tool)(low); f) No incident report in the past 12 months and g) An available release plan. Those eligible inmates should immediately be put in 14 days quarantine and processed for home confinement. Howard, as further developed below, meets those stricted criteria but one. According to the BOP, Howard's 924(c) conviction placed him as a violent offender, thus ineligible for home confinement. Because the denial is based on the "existence of an official BOP policy", seeking BOP's remedy "would be futile", or 2) With the COVID-19 making every day matter, inmates and staff dying and the impact of infected prisons -cruise ships on steroids- on the society this is critical important distinction that meet "exigent circumstances". See also CARES ACT, Sec. 12003(b)(2) which Congress passed, bipartisan, and signed in to LAW the same day by President Trump authorizing the Attorney General and the BOP to send inmates to home confinement due to this pandemic. See also U.S. v. Brannan, No. 4:15-cr-80-01 (S.D.Tx. Apr. 2, 2020) (though not reflected in order, emergency motion was granted on same day filing for prisoner who had served only 9 month(25%) of a 36 month sentence for fraud at FCI Oakdale and had not exhausted BOP remedies).

## III HOW COVID-19, IN THE BOP, WOULD IMPACT THE SOCIETY

On Monday March 9, 2020, 15 Senators sent BOP Director a letter expressing concern about possible COVID-19 outbreak in Federal prison. "Over 175,000 individuals are incarcerated in Federal prisons and jails, and thousands of incarcerated people, their families and friends, and correctional staff move in and out of federal prisons every day [] The unconstrained spread of coronavirus in federal prisons and jails endangers the federal prison population, correctional staff and the general public." A little over three weeks ago, Attorney General Barr announced that " total of six inmates and four prison staffers have tested positive for COVID-19." Two weeks ago, BOP admitted to 138 inmates and 59 staff sick (with eight fatalities). As of Sunday evening April 12, the BOP updated numbers report, 352 federal inmates and 189 federal prison staffers had tested positive and on April 15, 2020 the BOP reported 13 fatalities. As of April 19, there are 495 inmates (up 41% from the previous week) and 305 staff (up 61% from previous week) ill with COVID-19 in the BOP institutions. 22 fatalities.
A couple weeks ago, the U.S. District for the Eastern District of New York ordered the wardens at MCC New York and MDC Brooklyn to report (twice a week) to the Court on the status of COVID-19 testing at the facilities. In a report on Friday, the wardens admitted that only 19 inmates (out of a combined population of nearly 2,500) had been tested.
In OHIO, a U.S. District Court Judge, James Gwin called the lack of testing at Elkton prison a "debacle" especially compared with a nearby state prison that has concluded thousands of tests.
The BOP told the largest federal correction officers union during a Thursday meeting that it would soon announce major steps to deal with the challenge. The reality is that the BOP has almost no ability to test "we have very, very limited amounts of testing kits" said Brandy Moore, Secretary Treasurer of National Union that represents correctional officers in federal prisons also adding that "our numbers are not going to be adequate because we're not truly testing them".
At FCC Terre Haute, Steve Markle, another leader of National Union who works at the prison said "we have between 2,500 and 3,000 inmates and we were given four tests." In a filing in the E.D.N.Y. on Monday April 13, 2020 the BOP admitted the "shortage of tests".
Joe Rojas, a regional union official, complained, "the Justice Department need to be proactive instead of reactive." He said there have already been scares in BOP facilities in Seattle and Miami.
Aaron McGlothing, head of the local union at FCI Mendota in California, said "you've got to understand we're in a prison there's nowhere to go," he stressed "if somebody comes down sick, what are you going to do? Everybody's going to get sick."
On Friday April; 13, the Marshall Project reported Dr. Sylvie Cohen, BOP's chief of occupational and employee health, ordered Oakdale staff back to work the day after they took inmate Patrick Jones (the first BOP's death for COVID-19) to the hospital. The COs were issued no protective equipment other than latex gloves. Dr. Cohen reportedly directed that 'officers should work unless they showed symptoms.' This advice flew in the face of the CDC guidance, which called for people who have had close contact with a confirmed case of COVID-19 to isolate themselves at home for 14 days.
This virus has exposed the systemic failures that come from overcrowded prisons. As FORBES notes, the BOP's "failures are resulting from lack of a widespread testing protocol [], the continued transfer of inmates between institutions [sometimes to

2

TRULINCS 15668002 - HOWARD, STEPHEN - Unit: COL-A-A
--------------------------------------------------------------------------------

comply with contracts with private prison], the introduction of new inmates [] and the thousands of staff and contractors that go in and out of these institutions." It also added that the BOP's efforts, like increasing the rate of hiring new COs, has had tragic consequences.

Meanwhile, inmates are dying and Coleman Low (where Howard is housed) has 3 inmates and 1 staff with COVID-19 and although the facility is under lockdown, inmates are in contact with COs, staff and other inmates working in the kitchen, laundry, Medical Service, Commissary, etc. Thus, it is unsurprising that by the time this Emergency motion reach out the Court, more infected cases and deaths, sadly, are going to be confirmed. Like Georgetown University assistant law professor Shon Hopwood wrote 2 weeks ago in THE APPEAL, no one should "look to the DOJ to release enough people to make prisons and their surroundings communities safe."

In the other hand, Courts across the country are taking actions and expeditiously granting relief. Perhaps Courts realized that in the middle of this pandemic, prisons are like nursing homes or cruise ships but on steroids. See U.S. v Foster, No 1:14-cr-324-02 (MD PA. Apr. 3, 2020)("The circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic are unprecedented. It is not stretch to call this environment 'extraordinary and compelling', and we well believe that, should we not reduce defendant's sentence, defendant has a high likelihood of contracting COVID-19 from which he would 'not be expected to recover'. U.S.S.G. 1B1.13. No rationale is more compelling or extraordinary."); see also U.S. v. Brannan, Supra; U.S. v. McCarthy, No. 3:17-cr-0230 (D.Conn. Apr. 8, 2020); U.S. v. Hansen, No. 07-cr-00520 (E.D.N.Y. Apr. 8, 2020); U.S. v. Trent No. 16-cr-00178-CRB-1 (N.D. Cal. Apr. 9, 2020); U.S. v. Plunk, No. 3:94-cr-36-TMB (D. Alaska Apr. 9, 2020); U.S. v. Decator No. CCB-95-0202 (D.Md. Feb. 6, 2020); U.S. v. Millan, No. 91-cr-685 (LAP)(S.D.N.Y. Apr. 6, 2020); U.S. v. Marin, No. 15-cr-252 (E.D.N.Y. Mar. 30, 2020) and U.S. v Powell, No. 94-cr-00316 (D.D.C. Mar. 28, 2020).

TRULINCS 15668002 - HOWARD, STEPHEN - Unit: COL-A-A

---

FROM: 15668002
TO:
SUBJECT: CRIMINAL CASE 3:15-CR-240-MHT
DATE: 04/24/2020 06:01:54 PM

## IV  RELEVANT BACKGROUND

    Howard pled guilty to possession with intent to distribute 1,4-butanediol, 21 U.S.C. 813 & 841(a)(1); Possession of methamphetamine, 21 U.S.C. 844(a), and Brandishing a firearm during a drug trafficking crime, 18 U.S.C. 924(c)(1)(A)(ii). As to the brandishing charge and specifically the intimidate element, the following was said by Howard during the plea colloquy: "I showed [gun] to him [undercover], but not in a manner to intimidate [] because he asked what it was when I opened [ ]my console. And I just told him what it was. And it was unloaded. And I made sure that it had no bullets in it, and i let him look at it. I handed it to him." Cr-DOC # 44; See also Preliminary and detention hearing (Gov't investigator saying that Howard cleared the weapon and handed the gun to the undercover). Although Howard, as a layman and ignorant of the elements of the charge, did not clearly understand the technicality of the statute, he felt really regretful and decided to take responsibility for his actions by pleading guilty. See also Civil Case 3:16-00803-MHT-CSC, Doc # 5-1 (Howard's Attorney's affidavit: Howard "was always clear to me in his instructions that he did not want to go to trial").
Howard was sentenced -within the guidelines- to 102 months consisting on 18 months for the drugs and 84 months for the brandishing to run consecutively.

## V  WHETHER HOWARD IS ENTITLED TO RELIEF

    Given that the Court has jurisdiction and discretion to find whether there is extraordinary and compelling reason other than or in combination with Howard's health, Howard proffer the following facts to support that finding:

    1) Howard, 69 year old, is neither sex offender nor terrorist. He is housed at a low security facility and the BOP, recently assessed his recidivism as minimum. He is working at UNICOR (for 40 months) and has completed several classes and programs such as Drug Addiction Treatment, preventive health, conversational Spanish, leather tooling, native American culture, among other. Howard paid his fine and assessment and he does not have mental health issues. He has served 59 months in prison (or 69% of his sentence accounting good-time credit) with excellent conduct. His projected release date is on August 18, 2022, 28 months from today. Howard does not have a Detainer. Despite that this record well meets the BOP's criteria for release to home confinement, Howard -according to the BOP- does not qualify for such relief because his 924(c) charge is a violent offense.
Howard's 18 U.S.C. 924(c)(1)(A)(ii) offense has two exclusive elements, one related to crime of violence or, to drug trafficking crime. Howard's 924(c) conviction is predicated on possession with intent to distribute drugs, therefore not a crime of violence. Even using a categorical approach, which Court assesses whether a crime qualifies as a violent in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion,  Johnson v. U.S. 135 S.Ct. at 2557 (2014), the 924 (c)(1)(A)(ii) is clearly a divisible criminal statute which set out elements of the offense, excluding one from the other. Descamps v. U.S. 133 S.Ct. at 2283 (2013). In fact, in addressing a Dimaya claim brought by Howard, the Magistrate found that Howards's "firearm was possessed in furtherance of a drug trafficking crime, not a crime of violence." Cv. Doc#32-1 at page 23. The Magistrate's recommendation was adopted and decreed. Cv. Doc#39.
The BOP interpretation of Howard's 924(c) offense as a violent one is erroneous and caused Howard's exclusion from home confinement which potentially could save his life.
It should be noted that Howard does not have a violent history. In fact, besides the instant offense and a DUI -almost 30 years ago- he has never been convicted of any crime.

    2) Howard has diabetes for 27 years and has hypertension (high blood pressure). These conditions along with his 69 years old and the lack of social distancing at FCI Coleman makes Howard -according to the CDC- a high risk person for COVID-19. He also has glaucoma and secondary diabetic complications of neuropathy of feet and legs. See attached Medical Record; See also Colvin, Supra (Petitioner's diabetic condition along with lack of social distancing at FDC Philadelphia meet extraordinary and compelling reason for relief). FDC Philadelphia has 1023 inmates while Coleman Low (Howard location) has 2060 inmates.

    3) If this Court decide to send Howard to Home Confinement or to reduce his sentence as time served then Howard's daughter, Kelley Howard Farr -a 46 years old, x-ray technician who works at Auburn Acute Care and lives in 1239 Penny Lane Auburn, Al 36830 for more than 20 years, 10 minutes from East Alabama Medical Center- is more than able and willing to take care of Howard until she finds suitable housing. She is currently looking into purchasing a mobile home for Howard in Auburn, Al. She has a power of Attorney to accomplish this. However, she will check first with Probation to determine what is suitable. Howard's income and savings are in the form of stocks ($26,000); 403(b) ($9,242.24); Auburn Bank Checking Account ($15,001.63) and retirement ($1,166.5 a month from Teacher retirement and Utility Company retirement) which is going to be

4

TRULINCS 15668002 - HOWARD, STEPHEN - Unit: COL-A-A
-----------------------------------------------------------------------------------

increased an additional $3,000 a month due to social security on January 2021 (when Howard turns 70 years old). These amounts can be updated by his daughter Kelley who can be reached at 334-663-3696.

### CONCLUSION

Howard believes that the above-mentioned points permits relief for "extraordinary and compelling reason other than, or in combination with, the reason described in subdivision (A) through (C)" U.S.S.G. 1B1.13 cmt. n1(d); See also Colvin, Supra. Therefore. Howard respectfully request this HONORABLE COURT to be sent to home confinement for the 28 remaining months of his sentence or in the alternative to have his sentence terminated as time served and begin his 3 year term of Supervised Release.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 24, 2020 I sent a true and correct copy of the foregoing with the CLERK of the Middle District of Alabama Court, which will send a notice of filling to all parties and served a copy upon the following via electronic filing.

> Mr. Verne H. Speirs,
> Mr. Jonathan S. Ross
> Assistants United States Attorney
> 131 Clayton Street
> Montgomery, Alabama 36104

### DECLARATION

I declare under penalty of perjury, 28 U.S.C. 1746, that the foregoing is true and correct to the best of my knowledge and memory.

> Howard Stephen
> Reg. 15668-002
> Federal Correctional Institution
> Coleman Low
> P.O. Box 1031
> Coleman, Fl. 335321

Avg 18th



# Individualized Reentry Plan - Program Review (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: HOWARD, STEPHEN  15668-002

SEQUENCE: 01995478
Team Date: 12-18-2019

| | |
|---|---|
| Facility: | COL COLEMAN LOW FCI |
| Name: | HOWARD, STEPHEN |
| Register No.: | 15668-002 |
| Age: | 68 |
| Date of Birth: | 01-22-1951 |

| | |
|---|---|
| Proj. Rel. Date: | 08-18-2022 |
| Proj. Rel. Mth: | GCT REL |
| DNA Status: | FOR07166 / 04-22-2016 |

### Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COL | UNICOR 4 | UNICOR WORKER, INSIDE, CREW #4 | 12-10-2019 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COL | ESL HAS | ENGLISH PROFICIENT | 04-22-2016 |
| COL | GED HAS | COMPLETED GED OR HS DIPLOMA | 04-22-2016 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| FOR | C | LEATHER TOOLING | 01-07-2017 | 04-14-2017 |
| FOR | C | ACE KEYBOARDING 7-8P T | 12-27-2016 | 03-21-2017 |
| FOR | C | PREVENTIVE HEALTH 1-2P W CORE1 | 09-29-2016 | 12-15-2016 |
| FOR | C | NATIVE AMERICAN CULTURE 6-8P R | 08-02-2016 | 09-23-2016 |
| FOR | C | CONVERSATIONAL SPANISH 6-7P W | 08-02-2016 | 09-23-2016 |
| FOR | C | HEALTHY CHOICES 1-2P F CORE 1 | 08-12-2016 | 09-23-2016 |
| FOR | C | JOB SEARCH 6-7P T CORE 2 | 08-09-2016 | 09-06-2016 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 05-02-2016 |
| CARE2 | STABLE, CHRONIC CARE | 05-02-2016 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 01-09-2019 |
| NO F/S | NO FOOD SERVICE WORK | 04-27-2016 |
| NO PAPER | NO PAPER MEDICAL RECORD | 04-22-2016 |
| REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 01-09-2019 |
| SOFT SHOES | SOFT SHOES ONLY | 01-09-2019 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 08-12-2019 |
| ED COMP | DRUG EDUCATION COMPLETE | 08-30-2016 |
| NR COMP | NRES DRUG TMT/COMPLETE | 03-05-2019 |

### FRP Details

Most Recent Payment Plan

FRP Assignment:   COMPLT   FINANC RESP-COMPLETED   Start: 06-06-2016
Inmate Decision:  AGREED   $25.00    Frequency: QUARTERLY
Payments past 6 months:  $1,425.00    Obligation Balance: $0.00

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|

Sentry Data as of 12-17-2019    Individualized Reentry Plan - Program Review (Inmate Copy)    Page 1 of 3



| | Individualized Reentry Plan - Program Review (Inmate Copy) | SEQUENCE: 01995478 |
|---|---|---|
| | Dept. of Justice / Federal Bureau of Prisons | Team Date: 12-18-2019 |
| | Plan is for inmate: HOWARD, STEPHEN   15668-002 | |

### Most Recent Payment Plan

| No. | Type | Amount | | Balance | Payable | | Status | |
|---|---|---|---|---|---|---|---|---|
| 1 | ASSMT | $425.00 | | $0.00 | IMMEDIATE | | COMPLETEDZ | |
| | | Adjustments: | Date Added | Facl | Adjust Type | Reason | | Amount |
| | | | 10-16-2019 | FOR | PAYMENT | OUTSIDE | | $425.00 |
| 2 | FINE | $1,000.00 | | $0.00 | IMMEDIATE | | COMPLETEDZ | |
| | | Adjustments: | Date Added | Facl | Adjust Type | Reason | | Amount |
| | | | 10-16-2019 | FOR | PAYMENT | OUTSIDE | | $1,000.00 |

### Payment Details

Trust Fund Deposits - Past 6 months:   $1,383.78          Payments commensurate ?   N/A

New Payment Plan:        ** No data **

### Progress since last review

Arrived at FCC Coleman - Low on 11-19-2019

### Next Program Review Goals

IT IS THE RECOMMENDAITON OF THE UNIT TEAM YOU ENROLL INTO AN ACADEMIC PROGRAM OF CHOICE VIA COPOUT TO EDUCATION BY 01-2020

### Long Term Goals

Save release funds via earnings from performance pay until release. Develop good money management, budgeting and saving skills throughout incarceration.

### RRC/HC Placement

### Comments

** No notes entered **

# Bureau of Prisons
# Health Services
# Medication Summary
### Current as of 04/20/2020 17:12

| | | |
|---|---|---|
| **Complex:** COX--COLEMAN FCC | **Begin Date:** N/A | **End Date:** N/A |
| **Inmate:** HOWARD, STEPHEN | **Reg #:** 15668-002 | **Quarter:** A03-937L |

Medications listed reflect prescribed medications from the begin date to end date on this report.

**Allergies:** Denied

## Active Prescriptions

**amLODIPine 10 MG TAB**
Take one tablet (10 MG) by mouth each evening to control blood pressure
**Rx#:** 969678-COX    **Doctor:** Negron, Ivan MD
**Start:** 11/22/19    **Exp:** 11/21/20    **Pharmacy Dispensings:** 150 TAB in 151 days

**Aspirin 81 MG EC Tab**
Take one tablet (81 MG) by mouth each day
**Rx#:** 969679-COX    **Doctor:** Negron, Ivan MD
**Start:** 11/22/19    **Exp:** 11/21/20    **Pharmacy Dispensings:** 150 TAB in 151 days

**Atorvastatin 20 MG TAB**
Take one tablet (20 MG) by mouth each evening for control of cholesterol
**Rx#:** 969680-COX    **Doctor:** Negron, Ivan MD
**Start:** 11/22/19    **Exp:** 11/21/20    **Pharmacy Dispensings:** 150 tab in 151 days

**Diabetic Supply - Lancets**
Use to self-monitor and test blood sugar ONCE daily only AS NEEDED to check for low blood sugar between visits to HSU as directed
**Rx#:** 969682-COX    **Doctor:** Negron, Ivan MD
**Start:** 11/22/19    **Exp:** 05/20/20    **Pharmacy Dispensings:** 300 ea in 151 days

**Diabetic Supply - Test Strips(Glucocard Expr) 50**
Use to self-monitor and test blood sugar ONCE daily only AS NEEDED to check for low blood sugar between visits to HSU as directed
**Rx#:** 987237-COX    **Doctor:** Bonnet-Engebretson, Leonor MD
**Start:** 03/18/20    **Exp:** 09/14/20    **Pharmacy Dispensings:** 100 strip in 34 days

**Dorzolamide HCL Ophth 2%, 10 ML Soln**
Instill one drop in both eyes three times daily
**Rx#:** 969684-COX    **Doctor:** Negron, Ivan MD
**Start:** 11/22/19    **Exp:** 11/21/20    **Pharmacy Dispensings:** 50 ML in 151 days

**DULoxetine HCl Delayed Rel 30 MG Cap**
Take one capsule (30 MG) by mouth each evening for pain
**Rx#:** 969685-COX    **Doctor:** Negron, Ivan MD
**Start:** 11/22/19    **Exp:** 05/20/20    **Pharmacy Dispensings:** 150 Cap in 151 days

| Complex: COX--COLEMAN FCC | Begin Date: N/A | End Date: N/A |
|---|---|---|
| Inmate: HOWARD, STEPHEN | Reg #: 15668-002 | Quarter: A03-937L |

## Active Prescriptions

**Lisinopril 40 MG Tab**
Take one tablet (40 MG) by mouth each day to control blood pressure
Rx#: 969689-COX    Doctor: Negron, Ivan MD
Start: 11/22/19   Exp: 11/21/20    Pharmacy Dispensings: 150 TAB in 151 days

**metFORMIN HCl 850 MG Tab**
Take one tablet (850 MG) by mouth twice daily with food for control of diabetes   ***note decreased dose***
Rx#: 969706-COX    Doctor: Negron, Ivan MD
Start: 11/25/19   Exp: 11/24/20    Pharmacy Dispensings: 300 TAB in 148 days

**Timolol Maleate Ophth Soln 0.5% (10 ML)**
instill one drop in both eyes twice daily
Rx#: 969707-COX    Doctor: Negron, Ivan MD
Start: 11/25/19   Exp: 11/24/20    Pharmacy Dispensings: 50 ML in 148 days

**Insulin NPH (10 ML) 100 UNITS/ML INJ**
Inject 48 units of NPH insulin subcutaneously each morning---Inject 40 units of NPH insulin subcutaneously each evening ***pill line***
Rx#: 969686-COX    Doctor: Negron, Ivan MD
Start: 11/22/19   Exp: 11/21/20    Pharmacy Dispensings: 0 ML in 151 days

**Insulin Reg (10 ML) 100 UNITS/ML Inj**
Inject units of regular insulin subcutaneously two times a day FSBS 151-200=2u, 201-250=4u,251-300=6u,301-350=8u,351-400=10u, >401=Call MD ***pill line***
Rx#: 969687-COX    Doctor: Negron, Ivan MD
Start: 11/22/19   Exp: 11/21/20    Pharmacy Dispensings: 0 ML in 151 days

**Insulin Reg (10 ML) 100 UNITS/ML Inj**
Inject 15 units of regular insulin subcutaneously two times a day ***pill line***
Rx#: 969688-COX    Doctor: Negron, Ivan MD
Start: 11/22/19   Exp: 11/21/20    Pharmacy Dispensings: 0 ML in 151 days




100 North Gay Street
P.O. Box 3110
Auburn, Alabama 36831-3110
Telephone 334-821-9200
www.auburnbank.com

00198

**AUBURNBANK**
RETURN SERVICE REQUESTED

198 1 AV 0.380  77860-7A*3*00198****AUTO**SCH 5-DIGIT 36830
STEPHEN KENNETH HOWARD

**IMPORTANT NOTICE-PLEASE READ**

AuburnBank is increasing your purchase power! Effective May 17th, we are increasing the daily purchase limit on your AuburnBank debit card to $5,000.00. The daily ATM limit will remain unchanged. If you have requested your limit be lowered in the past, please contact Electronic Services at 334-821-9200 and we will be glad to reduce the limits. Ask us about protecting your account by enrolling in text alerts to notify you when your debit card has been used.

Golden Key 50+

| | | | |
|---|---|---|---|
| Account Number | | # of Images Enclosed | 1 |
| Previous Balance | $11,095.29 | Statement Dates | 9/09/19 thru 10/06/19 |
| 3 Deposits/Credits | $4,014.10 | Average Ledger Balance | 12,392 |
| 8 Checks/Debits | $107.76 | Average Collected Bal | 12,087 |
| Service Charge | $.00 | | |
| Interest Paid | $.00 | | |
| Ending Balance | $15,001.63 | | |

**DEPOSITS POSTED:**

| Date | Description | Serial# | Amount | Bank Ref# |
|---|---|---|---|---|
| 9/27 | Sep 30 PAY RSA A636045055   09/30/19 ID NAME-STEPHEN K HOWARD TRACE #-091000010634947 | | $787.66 | every month |
| 9/27 | REGULAR DEPOSIT | | $2,847.60 | 013000105 |
| 9/30 | PN PMTS/CP SOUTHERN COMPANY 1043581074   10/01/19 ID NAME-HOWARD TRACE #-011000028435429 | | $378.84 | every month |

\*

**WITHDRAWALS POSTED:**

| Date | Description | Amount | Bank Ref# |
|---|---|---|---|
| 9/10 | Western Union Financial San Fr POS PIN CK 09/09/19 21:24 | $56.95 | |
| 9/11 | AMZN Mktp US*MO4IN0SN0 Amzn.co POS PUR CK 09/10/19 14:47 | $8.73 | |
| 9/12 | AMZN Mktp US*NU2SG1O13 Amzn.co POS PUR CK 09/11/19 21:56 | $9.36 | |
| 9/16 | AMZN Mktp US*2K2TI2WN3 Amzn.co POS PUR CK 09/15/19 12:20 | $5.63 | |
| 9/16 | AMZN Mktp US*JX4H658Y3 Amzn.co POS PUR CK 09/16/19 13:32 | $5.77 | |
| 9/16 | AMZN Mktp US*LK18J5QC3 Amzn.co POS PUR CK 09/16/19 12:33 | $5.79 | |

\* life insurance from grandaddy



Member FDIC

**FOR CHANGE OF ADDRESS**
My New Address is:

NAME_____

STREET_____

CITY_____

STATE_____ ZIP CODE_____

MY ACCOUNTS ARE:
☐ CHECKING ACCOUNT NUMBER_____
☐ SAVINGS ACCOUNT NUMBER_____
☐ OTHER_____
AUTHORIZED SIGNATURE_____

Disregard if you have a Commercial Account

### In Case of Errors or Questions About Your Electronic Transfers

If you think statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, telephone us at (334) 887-2760 or write us at the following address: Auburn Bank, Attention: Bookkeeping, P.O. Box 3110, Auburn, Alabama 36831. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error of problem appeared.

(1) Tell us your name and account number.
(2) Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days. We will determine whether an error occurred within 10 business days (5 business days for CheckCard point-of-sale transactions and 20 business days if the transfer involved a new account) after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days (90 days if the transfer involved a new account, point-of-sale transaction, or a foreign initiated transfer) to investigate your complaint or question. If we decide to do this we will credit your account within 10 business days (5 business days for CheckCard point-of-sale transactions and 20 business days if the transfer involved a new account) for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account. An account is considered new account for 30 days after the first deposit is made, if you are a new customer.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

If you would like to confirm that an electronic deposit to your account has been made as scheduled, you may call us at (334) 887-2760. If you have contracted with us for Tiger Tellerphone (334-887-2713) or AuburnBank Online (www.auburnbank.com), you may also access that information through these services.

**Use This Form To Balance Your Checkbook Records With Your Bank Statement.**
Fill in below amounts from your Bank Statement and checkbook

Balance shown on Bank Statement   $_____

Balance shown in your Checkbook   $_____
Add any Deposits, Interest Payments and other Credits listed on Statement but not already entered in Checkbook
(Enter in Checkbook)

Add Deposits in Checkbook but not on Statement   $_____
                                                  _____
                                                  _____

                                                  $_____
                                                  _____
                                                  _____

Total $_____
Balance $_____

Total $_____
Balance $_____

Subtract Cheks issued but not on Statement; include any other withdrawals made but not on Statement.

| Check # | Amount |
|---------|--------|
|         |        |
|         |        |
|         |        |
|         |        |
|         |        |
|         |        |
|         |        |
|         |        |

Subtract Service Charge and other Bank Charges not in Checkbook
(Enter in Checkbook)

$_____
_____
_____

Total $_____
Balance $_____

Total $_____
Balance $_____

These totals should agree, and they represent the correct amount of money you have in the bank.
Differences, if any should be reported to the bank in accordance with the above.

Member FDIC     Equal Housing Lender



Account holder: STEPHEN KENNETH HOWARD



# THE AUBURN UNIV TAX DEFERRED 403(B) AND 403(B)(7) PROGRAM

Plan # 150475

This plan includes the following annuity contracts and other investments. The annuity contracts are indicated with either TIAA or CREF followed by a number.
TIAA-███████, CREF-███████

## Summary of your activity

| | |
|---|---|
| Balance as of Jul 1, 2019 | $9,145.75 |
| Gains/Loss | 96.49 |
| **Balance as of Sep 30, 2019** | **$9,242.24** |

## What you have vested

This plan includes a delayed vesting provision that may apply to some or all employees. If the vesting provision applies to you, the vested status of any employer contributions and earnings are generally based on your length of employment at your employer. A vested percentage and vested market value is not currently displayed for any participants in this plan because the employer currently maintains this information. This message is not intended to describe your personal vesting status. Please see the plan's Summary Plan Description for more information about the vesting rules for this plan.

## Your investments

| Annuity contracts and other investments | Number of units/shares | Unit/share price as of Sep 30, 2019 | Value as of Sep 30, 2019 | Percent of your total plan |
|---|---|---|---|---|
| **Pre-Tax Investments** | | | | |
| **Equities** | | | | |
| CREF Stock R2 (CREF H074526-8) | 1.4680 | $514.5941 | $755.43 | 8.17% |
| CREF Equity Index R2 (CREF | 1.1028 | 248.9948 | 274.60 | 2.97% |
| **Total Equities** | | | $1,030.03 | 11.14% |
| **Real Estate** | | | | |
| TIAA Real Estate (TIAA ███████ | 18.8690 | $435.2223 | $8,212.21 | 88.86% |
| **Total Real Estate** | | | $8,212.21 | 88.86% |
| **Total value of your investments** | | | **$9,242.24** | **100%** |

Account holder: STEPHEN KENNETH HOWARD

THE AUBURN UNIV TAX DEFERRED 403(B) AND 403(B)(7) PROGRAM (Continued)

## How the value of your investments changed this period

To view the current performance for your specific investments, log in to your account at TIAA.org or you can visit TIAA.org/performance for general performance information.

| Investments | Value as of Jul 1, 2019 | Net result of transactions | TIAA interest/ Gain or loss | Value as of Sep 30, 2019 |
|---|---|---|---|---|
| TIAA Real Estate | $8,117.18 | $0.00 | $95.03 | $8,212.21 |
| CREF Stock R2 | 757.07 | 0.00 | - 1.64 | 755.43 |
| CREF Equity Index R2 | 271.50 | 0.00 | 3.10 | 274.60 |
| **Total value of your investments** | **$9,145.75** | **$0.00** | **$96.49** | **$9,242.24** |

## Your transaction details

There are no transactions this quarter.

## Information about your portfolio

Please review your statement and let us know promptly of any inaccuracies. To protect your rights, you should also notify us in writing. Unless we receive written notification within 60 days, we will assume our information is correct.

With respect to financial services provided by TIAA-CREF Individual & Institutional Services, LLC and Teachers Personal Investors Services, Inc., please note that FINRA BrokerCheck is available to help you check the background of brokers and brokerage firms. FINRA has published an investor brochure that includes information regarding FINRA BrokerCheck. To learn more, please visit www.finra.org or call 800-289-9999.

Per Notice 2017-09 withholding agents may forego issuing a corrected tax withholding and information return or statement if the error is under $25 or $100, respectively. It is TIAA's longstanding practice to issue an amended form for all information returns that contain a valid error. TIAA reserves the right to change this policy at any time and will provide notification, as well as written instructions on how to opt out, in the event the policy changes.

**Diversified and Well-Balanced Portfolio:** To help achieve long-term retirement security, you should give careful consideration to the benefits of a well-balanced and diversified investment portfolio. Spreading your assets among different types of investments can help you achieve a favorable rate of return, while minimizing your overall risk of losing money. This is because market or other economic conditions that cause one category of assets, or one particular security, to perform very well often cause another asset category, or another particular security, to perform poorly.

It is also important to periodically review your investment portfolio, your investment objectives, and the investment options under the Plan to help ensure that your retirement savings will meet your retirement goals. For more information or additional resources regarding individual investing and diversification, visit the Internet website of the Department of Labor at www.dol.gov/ebsa/investing.html.

If you invest more than 20% of your retirement savings in any one company or industry, your savings may not be properly diversified. Although diversification is not a guarantee against loss, it is an effective strategy to help you manage investment risk. In deciding how to invest your retirement savings, you should take into account all of your assets, including any retirement savings outside of the Plan. No single approach is right for everyone because, among other factors, individuals have different financial goals, different time horizons for meeting their goals, and different tolerances for risk.